IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff/Respondent, | § | |
| | § | |
| V. | § | CR. No. C-02-230(1) |
| | § | C.A. No. C-04-405 |
| OTMAN FABBRI WINTER, | § | |
| | § | |
| Defendant/Movant. | § | |

**MEMORANDUM OPINION AND ORDER DENYING
MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE,
AND ORDER DENYING CERTIFICATE OF APPEALABILITY**

Pending before the Court is Movant Otman Fabbri Winter's ("Winter") motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. (D.E. 36).[1]  The government has filed a response (D.E. 38) and Winter has filed several additional motions and other documents in support of his motion.  (D.E. 39-43).  For the reasons set  forth herein, Winter's § 2255 motion is DENIED, and the Court also DENIES him a Certificate of Appealability.   Additionally, Winter's motion to file a response is GRANTED and his motions for expedited review and for case status are DENIED AS MOOT.

**I.  JURISDICTION**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

---

[1]      Docket entries refer to the criminal case, Cr. No. C-02-230.

## II. FACTUAL BACKGROUND AND PROCEEDINGS

A.     **OFFENSE CONDUCT**

On July 20, 2002 Winter entered the Sarita, Texas Border Patrol checkpoint in a Winnebago recreational vehicle.  Winter was the driver and sole occupant of the vehicle. The border patrol agents observed him to be nervous.  A canine alerted to the bottom front cargo area of the vehicle and Winter was directed to the secondary inspection area.  Once there, agents located 42 bundles of marijuana, wrapped in clear plastic and tin foil and concealed behind a false wall constructed in the cargo area of the vehicle.  The amount of marijuana was later determined to weigh 168 kilograms.[2]

During an inventory of the vehicle, agents recovered a functional stun gun in the rear cargo compartment of the driver's seat, a night vision device, binoculars, flashlight, several alias documents, and one round of 9 mm ammunition located in a wicker type basket.  Also located were a plastic bag containing 50 cigars and a large roll of tin foil similar to the material wrapped around the marijuana bundles.  (Winter later admitted to ATF agents that the cigars were transported by him into the United States from Mexico without paying a duty upon entry.)  The vehicle was registered to Winter's common law wife, Elena Tubbs. When retrieving the vehicle, Ms. Tubbs told agents that she had not been in the vehicle in more than one year.  (PSR at ¶3).

---

[2]     Although the PSR states that the indictment and amount of drugs was 157.3 kilograms, the amount actually contained in the indictment and discussed at rearraignment was 168 kilograms.  See D.E. 1; D.E. 29, Rearraignment Transcript ("R. Tr.") at 9, 14, 17.

2

Winter was arrested and taken into custody.  He later admitted to agents that he had full knowledge of the marijuana in the vehicle he was driving, and that he was to be paid between $30,000 and $35,000 for transporting the load.  (PSR at ¶4).

## B.    PROCEEDINGS

On August 15, 2002, Winter was charged in a single-count indictment with knowingly and intentionally possessing with intent to distribute approximately 168  kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B).  (D.E. 1).  On January 31, 2002, he pleaded guilty pursuant to a written plea agreement with the government. (D.E. 7, 8).  The terms of the plea agreement were that, in exchange for his guilty plea, the government would recommend that he be given a three-level credit for acceptance of responsibility and be sentenced at the low end of the applicable guidelines.  (D.E. 8).

Pursuant to the Court's order (D.E. 9), the Probation Office prepared a Presentence Investigation Report ("PSR").  The PSR determined the base offense level to be 26.  It added a two-level increase because of the defendant's possession of a stun gun, pursuant to USSG 2D1.1(b)(1), and then reduced his offense level by three levels for acceptance of responsibility, resulting in a total offense level of 25.  Combined with his criminal history category of I, the resulting guideline range for Winter's offense level was a term of imprisonment of 60 to 71 months.

Through retained counsel, John Gilmore, Winter filed objections to the PSR. Specifically, Winter objected to the two-level increase for the possession of the stun gun,

arguing both that it was not a "dangerous weapon" and also arguing that Winter did not

know of the gun's presence in the vehicle.  Defendant also argued at sentencing that he was

entitled to safety valve relief, pursuant to USSG § 5C1.2.  The PSR had not recommended

that he be sentenced under § 5C1.2, presumably because of the presence of the stun gun.

The safety valve allows the court to sentence certain defendants without regard to

the statutory minimum.  USSG § 5C1.2.  It is the defendant's burden to prove all of the

facts supporting the safety valve reduction.  United States v. Flanagan, 80 F.3d 143, 146-47

(5th Cir. 1996).  Specifically, a defendant must meet all of the following criteria to be

eligible for the safety valve:

> (1) the defendant does not have more than 1 criminal history point, as
> determined under the sentencing guidelines;
>
> (2) the defendant did not use violence or credible threats of violence or
> possess a firearm or other dangerous weapon (or induce another participant
> to do so) in connection with the offense;
>
> (3) the offense did not result in death or serious bodily injury to any person;
>
> (4) the defendant was not an organizer, leader, manager, or supervisor of
> others in the offense, as determined under the sentencing guidelines and was
> not engaged in a continuing criminal enterprise, as defined in section 408 of
> the Controlled Substances Act; and
>
> (5) not later than the time of the sentencing hearing, the defendant has
> truthfully provided to the Government all information and evidence the
> defendant has concerning the offense or offenses that were part of the same
> course of conduct or of a common scheme or plan, but the fact that the
> defendant has no relevant or useful other information to provide or that the
> Government is already aware of the information shall not preclude a
> determination by the court that the defendant has complied with this
> requirement.

18 U.S.C. § 3553(f).

4

Winter was sentenced on December 13, 2002,   During sentencing, the Court heard testimony both from Winter and from the DEA agent who was involved in the seizure of marijuana and other items from the mobile home driven by Winter.  The Court denied Winter's objection to the two-level increase to his offense level based on the stun gun and also denied him safety valve relief.

Although there was some discussion at Winter's sentencing as to whether he met the requirements of § 3553(f)(5), i.e., whether he had fully and truthfully debriefed, the Court never made an explicit finding on this issue.  Rather, the Court was clear that Winter was not entitled to the benefit of the safety valve due to his possession of the stun gun during the offense.  (S. Tr. at 45, 49-51).  The Court therefore adopted the PSR as written, and calculated the guideline range to be 60 to 71 months.  (See PSR at ¶ 35).  The Court sentenced him to 60 months in the custody of the BOP, to be followed by five years of supervised release, and a $100 special assessment.  (D.E. 15, 17). Judgment was entered on December 19, 2002.  (D.E. 17).

Winter timely appealed.  (D.E. 18).  The Fifth Circuit dismissed his appeal on August 4, 2003 upon Winter's motion. (D.E. 34).  Winter did not file a petition for writ of certiorari.  Winter filed the instant timely motion on July 26, 2004.  (D.E. 36).  The government's response was filed on October 4, 2004 (D.E. 38).  Shortly thereafter, Winter sought leave to file a reply, and then filed his reply. (D.E. 39, 40).  He subsequently filed a "Motion for  Expedited Review," (D.E. 41), a notice of supplemental authority (D.E. 42)

5

and a letter motion requesting the status of his case.  (D.E. 43).

### III.  MOVANT'S ALLEGATIONS

Winter's § 2255 motion asserts five grounds for relief.  First, he argues that his attorney and the government "enticed" him into pleading guilty by telling him he would receive safety valve relief.

His second, third and fourth grounds for relief all allege that his attorney was ineffective at sentencing, although for different reasons.  In his second ground, Winter claims his counsel failed to research the law and "presented pre-defeated" objections regarding the stun gun enhancement.  In his third, he argues that his counsel "permitted" the Court to deny him safety valve relief.  In his fourth, he claims that his attorney failed to object to the court's alleged inducement of a witness to change his testimony.

In his fifth ground for relief, he argues that his sentence was enhanced in violation of his Sixth Amendment rights, relying on Blakely v. Washington, 124 S. Ct. 2531 (June 24, 2004), which was extended to the federal sentencing guidelines in United States v. Booker, 125 S. Ct. 738 (2005).  As discussed in more detail herein, none of Winter's grounds entitle him to relief.

### IV.  ANALYSIS

**A.    28 U.S.C. § 2255**

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence: (1) constitutional issues, (2) challenges to the

district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996).  "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992).

## B.    INVOLUNTARY GUILTY PLEA

In Winter's first ground for relief, he alleges that he was enticed into pleading guilty by the assurances of his counsel and the government that he would receive safety valve relief.   As an initial matter, he is incorrect in his assertion that the plea agreement provided that the government would recommend safety valve relief.   (See D.E. 36, Supp. Mem. at § IV(1)).  As the government correctly notes, the only reference to safety valve relief in the agreement is the following statement:

> The Defendant understands that should the guideline imprisonment range be below the mandatory minimum punishment of five (5) years imprisonment, then the lowest sentence he can receive will be sixty (60) months imprisonment since the mandatory minimum period of imprisonment will control over the guideline range if the Defendant is not otherwise eligible for sentencing under 18 U.S.C.  3553(f) known as the "safety valve", or under 5k1.1 as described below.

(D.E. 8 at ¶ 3).  Nowhere in the written agreement Winter signed is there any promise or

guarantee that safety valve relief would be sought by the government or awarded to him. To the contrary, the agreement explicitly states that "[n]either the Government nor any law enforcement officer can or does make any promises or representations as to what sentence will be imposed by the court." (D.E. 8 at ¶ 6). Thus, the agreement itself does not contain any promise of safety valve relief.

To the extent that he is claiming that his attorney told him he would receive the benefit of the safety valve, that contention does not entitle him to relief. As an initial matter, his contention is unsworn, and the sworn affidavit of his attorney, John Gilmore, denies that he ever confirmed to Winter he would obtain safety valve relief. (See D.E. 38, Exh. A, ¶ 1). Rather, Mr. Gilmore avers that he informed his client "that the plea agreement was not binding on the Court and was not a guarantee that the departures would be applied." Id. Additionally, it is well established in this circuit that an attorney's erroneous prediction as to what sentence a defendant will receive does not render a guilty plea "unknowing" or "involuntary." United States v. Santa Lucia, 991 F.2d 179, 180 (5th Cir. 1993); Daniel v. Cockrell, 283 F.3d 697, 703-704 (5th Cir. 2002) (collecting cases).

Moreover, any contention that he pleaded guilty because of any promise of safety valve relief is belied by his own testimony at his rearraignment. During that proceeding, the Court expressly informed Winter that it did not have the power to sentence him to less than five years because of the minimum mandatory sentence unless the safety valve provision gives that authority. (R. Tr. at 10-11). Winter testified under oath that no one had

8

threatened or forced him to plead guilty, that no one had promised him leniency in exchange for a guilty plea, and that it was his decision to plead guilty. (R. Tr. at 11). The Court also explained that Winter's agreement with the government was for recommendations to the Court as to his sentence, and that if the Court did not follow those recommendations, Winter was not entitled to withdraw his guilty plea. Winter testified that he understood, and that no one had promised him what decision the Court would make. (R. Tr. at 13).

Winter's sworn statements in open court are entitled to a strong presumption of truthfulness. United States v. Lampaziane, 251 F.3d 519, 524 (5th Cir. 2001)(citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)). Indeed, the Fifth Circuit affords "great weight to the defendant's statements at the plea colloquy." United States v. Cothran, 302 F.3d 279, 283-84 (5th Cir. 2002). Winter testified both that no one had promised him any sentence, and that he understood only the Court could determine his sentence. His sworn statements also reflect that he was informed about the statutory minimum sentence applicable to his offense, which was exactly the sentence he received. Those sworn statements preclude the relief he seeks here, because they contradict any assertion that he was misled about his sentence or promised any specific sentence.[3]

---

[3] To the extent Winter is claiming his attorney actually "promised" him he would receive safety valve relief, he could proceed on that claim in the face of his inconsistent statements under oath, only under narrow circumstances. See United States v. Cervantes, 132 F.3d 1106, 1110 (5th Cir. 1998). Specifically, a defendant may seek habeas relief on the basis of alleged promises, even though inconsistent with his representations in open court, by proving: (1) the exact terms of the alleged promise; (2) exactly when, where, and by whom the promise was made; and (3) the precise identity of an eyewitness to the promise. 132 F.3d at 1110. A defendant is entitled to an evidentiary hearing on the issue if he can produce evidence showing the merit of his allegations, typically in the form of an affidavit from a reliable third party. Id. Winter has not

9

For all of the foregoing reasons, his first ground for relief fails.

## C.      ALLEGED INEFFECTIVE ASSISTANCE OF COUNSEL

### 1.      General Standard

An ineffective assistance of counsel allegation presented in a § 2255 motion is properly analyzed under the two-prong analysis set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  <u>United States v. Willis</u>, 273 F.3d 592, 598 (5th Cir. 2001).  To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial.   <u>Id</u>.  This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence.  <u>United States v. Dovalina</u>, 262 F.3d 472, 474-75 (5th Cir. 2001).  Where a defendant claims that his counsel was ineffective at sentencing, as Winter does, the defendant establishes prejudice by showing that there is a reasonable probability that but for counsel's alleged errors, the sentencing would have been different.  <u>See</u> <u>United States v. Phillips</u>, 210 F.3d 345, 350 (5th Cir. 2000).

If the movant fails to prove one prong, it is not necessary to analyze the other. <u>Armstead v. Scott</u>, 37 F.3d 202, 210 (5th Cir. 1994), <u>cert. denied</u>, 514 U.S. 1071 (1995) ("A court need not address both components of the inquiry if the defendant makes an

---

presented sufficient evidence showing the merit of his allegations, and thus would be unable to obtain relief even under the <u>Cervantes</u> exception.

insufficient showing on one"); Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

As discussed herein, there is no evidence to support any contention that, but for counsel's alleged errors, Winter would have received a different sentence.  Thus, he cannot show prejudice and his ineffective assistance claims fail.

### 2. Alleged Failures of Counsel Resulting in the Stun Gun Enhancement

In his second ground of error, Winter claims that his counsel was ineffective because he objected to the PSR on the grounds that a "stun gun" is not a dangerous weapon.  Winter claims that had his attorney researched the law prior to submitting the objection, he would have realized the law generally held that a stun gun is a dangerous weapon.  This claim fails because Winter cannot show prejudice.  Even if his counsel were deficient for failing to adequately research the law prior to submitting his objection, it is evident that what Winter calls a "pre-defeated objection" did not in any way prejudice Winter.  He cannot show that he would have received a lesser sentence had the objection not been made.  This claim is without merit.

### 3. Alleged Failures of Counsel Resulting in the Denial of Safety Valve Relief

Winter's third ground for relief is that his attorney was ineffective because he failed to research and argue to the Court that the Court's finding on the stun gun did not

necessarily preclude application of the safety valve, due to differing burdens of proof to be applied to each.  Specifically, USSG § 2D1.1 (the weapon enhancement) applies "if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." USSG § 2D1.1.  The "clearly improbable" language does not appear in the safety valve provision, however.  Rather, that provision merely provides that one of the five criteria necessary for safety valve relief is that the defendant did not "possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense."  18 U.S.C. § 3553(f)(3); USSG § 5C1.2.

Based on this, Winter argues that there are two different burdens to be applied to the determination of whether an enhancement is warranted under USSG § 2D1.1 and in determining whether the safety valve should be applied.  His argument finds implicit support in the Fifth Circuit's decision in United States v. Vasquez, 161 F.3d 909 (5th Cir. 1998).  See also United States v. Nelson, 222 F.3d 545 (9th Cir. 2000)(explicitly adopting the argument advanced by Winter).

In Vasquez, the Court noted that the government has the burden of proof under USSG § 2D1.1 of showing by a preponderance of the evidence "that a temporal and spatial relation existed between the weapon, the drug trafficking activity and the defendant."  Specifically, the government "must provide evidence that the weapon was found in the same location where drugs or drug paraphernalia are stored or where part of the transaction occurred. 161 F.3d at 912 (citations omitted).  Presumably, this includes a showing that it is not clearly

12

improbable that the weapon was connected with the offense.  See USSG § 2D1.1.  "In contrast to § 2D1.1, the defendant has the burden of proving that he qualifies for sentencing under § 5C1.2."  161 F.3d at 912.  A defendant thus has "to show, by a preponderance of the evidence, that he did not possess a firearm in connection with the drug conspiracy in order to qualify under the safety valve."  Id.   Thus, Winter is arguably correct that the weapon enhancement does not necessarily preclude application of the safety valve.  See Nelson, supra (so holding and collecting authority).

The Court repeatedly noted at Winter's sentencing, however, that the weapon enhancement for the "stun gun" precluded safety valve relief.  Winter's argument is that his counsel should have argued that, due to the differing burdens of proof, he could still have been eligible for the safety valve.

Assuming for purposes of this order that Winter could show his attorney was deficient for failing to research the law as to the different burdens of proof, and for failing to call that law to the Court's attention,[4] Winter's claim still fails because he cannot show prejudice.  See Carter, 131 F.3d at 463 ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

---

[4]      "Solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention."  United States v. Williamson, 183 F.3d 458, 462-63 (5th Cir. 1999).  In his affidavit, defense counsel admits that he was unaware of the Ninth Circuit's decision in Nelson, but does not address whether he was aware of the Fifth Circuit's decision in Vasquez, nor whether it is a directly controlling precedent.  (See D.E. 38, Exh. A at ¶ 3).

It is not clear from the sentencing transcript whether the Court utilized a "preponderance of the evidence" standard, or some higher burden when denying Winter safety valve relief. In any event, even applying the preponderance standard, the Court would have denied Winter safety valve relief, because Winter did not meet his burden of showing that it was more likely than not that the stun gun was not involved in the offense. Although Winter testified that he did not know the stun gun was in the vehicle, and that it had been purchased for his girlfriend's protection, the Court had before it ample, credible evidence to refute his testimony.

The stun gun was in the recreational vehicle, and his wife had told the probation officer that she had not been in the vehicle in more than a year. Additionally, the location of the stun gun was within arms' reach of Winter as the driver. Although Winter testified that the gun was not intended to protect the marijuana or to protect him, it was found along with other items that the DEA agent believed were consistent with narcotics trafficking, including binoculars, night-vision goggles, and aluminum foil.[5] (S. Tr. At 13-14). Thus, the evidence before the Court would not have led the Court to conclude that Winter had shown it was more likely than not that he did not possess a firearm in connection with the offense.

Indeed, the Court stated at sentencing: "I can't make the finding based on these facts that there is not an association between the stun gun and the drug trafficking crime. I mean, it's there in your vehicle. You've had the vehicle for a year. It's something you've

---

[5]     Aluminum foil had been used to wrap some of the marijuana bundles.

purchased."   Later, the Court elaborated: "I see the stun gun right behind you.  I see the stun gun as being a dangerous weapon.  I see it being carried in association with the drugs. I mean, if it was a 45 or a 38 or a 22 or some other pistol, I'd be arriving at exactly the same conclusion."   Although the Court later discussed the "clearly improbable" standard, the above comments and the entirety of the sentencing transcript make clear that the Court would not have found in favor of Winter as to the applicability of the safety valve, no matter what standard of proof was applied.   That is also consistent with this Court's recollection of the sentencing.

Additionally, although the Court did not reach the issue,[6] the Court's current review of the record and recollection of the case lead it to conclude are that Winter would not have satisfied subsection (5) of § 3553(f) because he did not fully and truthfully debrief.  The DEA agent that testified shared that opinion, as did the probation officer who had prepared the PSR.   (S. Tr. at 12, 16-17, 38-41).   Likewise, the government did not make a recommendation for the application of the safety valve.

There were numerous reasons why the DEA agent believed Winter had not truthfully debriefed.  For example, Winter said that three other individuals had been involved in the offense, in terms of recruiting him and loading the marijuana, but he was unable to give the full names of any of those individuals, nor was he able to provide any contact information

---

[6]        Because of the presence of the stun gun, Winter did not satisfy the requirements of § 3553(f)(2). Thus, the Court did not reach the issue of whether Winter had satisfied § 3553(f)(5). (See generally S. Tr.).

for any of them. (S. Tr. at 14-21). Winter did not give the agent any information that the agent could actually follow up on or look for, such as a motel receipt. The agent also noted that in various locations in the trailer, he found several notebooks, address books and business cards, and that a "very high percentage" of the individuals listed in those materials "are involved in one way or another or documented in one way or another by law enforcement agencies being involved in the narcotics trade and/or money laundering." (S. Tr. at 13).

The Court's comments at sentencing clearly indicated its belief that some of the information given by Winter concerning the offense was not truthful or complete. (See S. Tr. at 20-21 (Court's comments regarding one of the nicknames of an accomplice given by Winter); S. Tr. at 41 (Court's questioning of Winter's involvement in drugs, as opposed to legitimate businesses); S. Tr. at 50 (Court's comments that it did not believe Winter regarding many matters and that there are too many inconsistencies in his descriptions of what he does and who he is). The Court's comments and its recollection of the sentencing lead to the inescapable conclusion that the Court would have denied safety valve relief, had it reached the issue, on the basis of § 3553(f)(5). Thus, no prejudice arises from the alleged failure of Winter's counsel to object to the burden of proof utilized by the Court in denying safety valve relief based on the presence of the stun gun. Put differently, even if his counsel had called to the Court's attention the differing burdens of proof, it would not have changed Winter's sentence. His ineffective assistance of counsel claim on this ground fails.

16

**4.      Failure of Counsel to Object to Alleged Inducement of Witness to Change Testimony**

In his fourth ground for relief, Winter challenges his attorney's failure to object to the Court's questioning of the government agent.  His argument is meritless.  The Court is entitled to ask questions of witnesses, and, in any event, the answer elicited from the witness by the Court's questioning simply reiterated testimony the witness had already provided.  Thus, any objection by defense counsel to the Court's questioning would have been overruled.  An attorney's performance is not deficient for failing to raise a frivolous objection, nor is there any prejudice from such a failure.  United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999)("An attorney's failure to raise a meritless argument thus cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.").  Accordingly, Winter's fourth ground for relief fails.

**D.      BLAKELY/BOOKER CLAIM**

Winter's fifth claim for relief is that he is entitled to be resentenced pursuant to the Supreme Court's decisions in Blakely and Booker.  Winter is only entitled to relief under Booker if the decision applies retroactively on collateral review.  The Fifth Circuit has not yet addressed whether Booker is retroactively applicable on initial collateral review, although it recently held that the Supreme Court has not made Booker retroactive, for purposes of allowing second or successive petitions under 28 U.S.C. § 2255. In re Elwood,

__ F.3d __, 2005 WL 976998 (5th Cir. April 28, 2005). The Second, Third, Sixth, Seventh, and Eleventh Circuits have all addressed the retroactivity of <u>Booker</u> on initial collateral review, however, and have concluded that <u>Booker</u> does not apply retroactively. <u>See</u> <u>McReynolds v. United States</u>, 397 F.3d 479 (7th Cir. 2005)(concluding that <u>Booker</u> states a new non-watershed procedural rule and does not apply retroactively to criminal cases final before its release); <u>United States v. Humphress</u>, 398 F.3d 855 (6th Cir. 2005)(same); <u>Varela v. United States</u>, 400 F. 3d. 864 (11th Cir. 2005)(same); <u>Guzman v. United States</u>, 404 F.3d 139 (2d Cir. 2005)(same); <u>Lloyd v. United States</u>, __ F.3d __, 2005 WL 1155220 (3d Cir. May 17, 2005)(same).

Similarly, in a post-<u>Booker</u> decision, the Tenth Circuit rejected a § 2255 movant's argument that <u>Blakely</u> applies retroactively. <u>United States v. Price</u>, 400 F.3d 844 (10th Cir. 2005). In so doing, the <u>Price</u> court utilized reasoning which would be equally applicable to <u>Booker</u>. <u>See generally</u> <u>id.</u>[7]

The Court agrees with the reasoning set forth in the foregoing cases and thus concludes that <u>Booker</u> is not retroactive to cases on collateral review. Because Winter's conviction became final prior to the date <u>Booker</u> was decided, <u>i.e.</u>, January 12, 2005, he is not entitled to relief under <u>Booker</u>.

## E.    CERTIFICATE OF APPEALABILITY

---

[7]    Notably, this Court has been unable to locate any federal decision, from either district courts or circuit courts, holding that <u>Booker</u> does apply retroactively.

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A).  Although Winter has not yet filed a notice of appeal, this Court nonetheless addresses whether he would be entitled to a COA.  See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000)(a district court may *sua sponte* rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue...only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits."  Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further.  United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002)(relying upon Slack, 529 U.S. at 483-84).

As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reasons would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Slack</u>, 529 U.S. at 484 (emphasis added).

The Court concludes that reasonable jurists could not debate the denial of Winter's § 2255 motion on substantive grounds nor find that the issues presented are adequate to deserve encouragement to proceed. <u>Miller-El</u>, 537 U.S. at 327 (citing <u>Slack</u>, 529 U.S. at 484). Similarly, as to the <u>Booker</u> claim that this Court has addressed on procedural grounds, the Court finds that Winters cannot establish at least one of the <u>Slack</u> criteria. Specifically, jurists of reasons would not find this Court's procedural ruling regarding retroactivity debatable. Accordingly, Winter is not entitled to a COA as to his claims.

## V. <u>CONCLUSION</u>

For the foregoing reasons, the Court hereby DENIES Winter's motion under 28 U.S.C. § 2255 (D.E. 36), and DENIES him a Certificate of Appealability. Additionally, Winter's motion for leave to file a reply (D.E. 39) is GRANTED and the Court has considered his supplemental briefing. His motion for expedited review (D.E. 41) and letter motion requesting the status of his case (D.E. 43) are both denied as moot in light of the Court's disposition of his motion herein.

It is so ORDERED this 10th day of June, 2005.


HAYDEN HEAD
CHIEF JUDGE